UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DONNA LONGWOLF :
:
v. : C.A. No. 17-00431-WES
:
ASHBEL T. WALL, et al. :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before the Court is the Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56 by Defendants Lifespan Physician Group, Inc. ("LPG") and Michael Burgard, M.D. (ECF Doc. No. 44). Plaintiff Donna Longwolf filed an Objection. (ECF Doc. No. 47). This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). After reviewing the parties' Memoranda and relevant case law, I recommend that the Motion for Summary Judgment be DENIED.

**Facts**

Plaintiff was an inmate at the Rhode Island Adult Correctional Institutions ("ACI"), who was seen and medically interviewed during the intake process on or about October 4, 2014. (ECF Doc. No. 29 at p. 5). During the medical interview, Plaintiff notified ACI staff that she had been taking Xanax or an equivalent benzodiazepine medication for approximately twenty years and was taking up to six milligrams per day. Id. Plaintiff alleges that she was notified of the ACI's policy that "benzos are not utilized at this facility." Id. Following her intake, Plaintiff was initially given a reduced dose of Xanax, which was ultimately terminated altogether on or about October 21, 2014. Id. at pp. 6-7. Thereafter, she suffered seizures on or about October 9, 2014 and again on October 25, 2014. (ECF Doc. No. 49 at ¶ 3).

On September 19, 2017, Plaintiff filed her Complaint in this case, alleging that the seizures resulted from being improperly medicated at the ACI. Id. at ¶ 4. Specifically, she alleges her prescription for benzodiazepine was not properly administered and that she suffered cardiac arrest following the second seizure and sustained permanent injuries. (ECF Doc. No. 55-1 at ¶ 2).

Prior to filing this case, Plaintiff possessed a Medication Sheet & Administration Records ("MARS") provided by the Rhode Island Department of Corrections (DOC) which identified Dr. Burgard, a psychiatrist, as a prescriber for at least one of Plaintiff's medications. (ECF Doc. No. 55-1 at ¶ 3; ECF Doc. No. 49 at ¶ 5). Dr. Burgard was not initially named in the Complaint, but was added as a Defendant following a Rule 16 Conference, as a result of what Plaintiff claims were representations made by the Assistant Attorney General indicating that Defendant Burgard was somehow responsible for Plaintiff's care or overall care or continuity of care, at least in relation to the failure to prescribe or ensure the continuation of a prescription for benzodiazepine to the Plaintiff. (ECF Doc. No. 55-1 at ¶ 26). On or about December 29, 2017, Plaintiff's counsel learned that Defendant Burgard was employed by LPG. Plaintiff was unaware up until that point that LPG had contracted with the DOC to provide psychiatric services. Id. at ¶ 31.

**Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the

nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**Discussion**

Plaintiff's Second Amended Complaint contains ten counts set forth under federal and state law. Defendants LPG and Dr. Burgard have moved for summary judgment, alleging that each of Plaintiff's claims against them are time-barred because a three-year statute of limitations applies. It is without dispute that Plaintiff alleges she was injured in October 2014, but LPG and Dr. Burgard were

not named in the case until more than three years later on January 16, 2018, when the Second Amended Complaint was filed. In their Motion for Summary Judgment, Defendants assert that the claims against them neither "relate back" pursuant to Fed. R. Civ. P. 15, nor does Rhode Island's "John Doe" statute, R.I. Gen. Laws § 9-5-20, permit them to be substituted for the John Doe Defendants named in the Complaint. In her Objection, Plaintiff does not dispute that a three-year limitations period applies, nor does she contend that the claims "relate back," but she does assert that the "John Doe" statute applies and saves her claims.

Section 9-5-20 of the Rhode Island General Laws, the so-called "John Doe" statute, provides: "[w]henever the name of any defendant or respondent is not known to the plaintiff, the summons and other process may issue against him or her by a fictitious name… and if duly served, it shall not be abated for that cause, but may be amended with or without terms as the court may order." Rhode Island courts have held that the tolling provisions of § 9-5-20 apply only when the name of the "John Doe" defendant is unknown to the plaintiff. See Sola v. Leighton, 45 A.3d 502 (R.I. 2012). It "permits a plaintiff to toll an applicable statute of limitations against a known but then unidentifiable defendant." Grossi v. Miriam Hosp., 689 A.2d 403, 404 (R.I. 1997). Further, a plaintiff must act with "reasonable diligence" to determine the name of the "John Doe" defendant. Delight W. v. Hill-Rom Co., No. K.C. 2003-0175, 2005 WL 2101413, at *4 (R.I. Super. Aug. 29, 2005).

Here, LPG and Dr. Burgard argue that Plaintiff cannot avail herself of the provisions of § 9-5-20 because Dr. Burgard's name was "known" to Plaintiff since he was listed as a prescriber of medication on the MARS that Plaintiff had possession of prior to filing her original Complaint. (ECF Doc. No. 44 at p. 8). Defendants argue that Dr. Burgard's "name and identity were conspicuously identified" in the medical records Plaintiff possessed prior to filing suit, and that therefore "the statute, by its plain terms, is inapplicable." Id. at pp. 10-11.

Plaintiff concedes that Dr. Burgard's name appears in the MARS provided to her by the DOC, but she argues that the information contained in the MARS, without more, was insufficient to inform Plaintiff as to Dr. Burgard's or LPG's actual role in her care, and potential liability based thereon. (ECF Doc. No. 47-1 at pp. 4, 6). As noted, the MARS contains a list of medications and prescribers for Plaintiff, and it states that Dr. Burgard prescribed Clonazepam, a benzodiazepine, on October 8, 2014. (ECF Doc. No. 44, Ex. E). This prescription was scheduled to end on October 21, 2014. Id. Plaintiff alleges that her benzodiazepine medication was "abruptly discontinued without explanation" on October 21, 2014. (ECF Doc. No. 1 at p. 6). Four days later, Plaintiff suffered a seizure and went into cardiac arrest, which she alleges was caused by benzodiazepine withdrawal, because her medication was discontinued without tapering. Id. at p. 7.

In support of her argument that § 9-5-20 applies to this case, Plaintiff initially attacks the general reliability of all DOC medical records such as the MARS in the present case. She notes that they "often do not accurately denote the individual that actually prescribed a medication." (ECF Doc. No. 47-1 at p. 4). Plaintiff contends that because the records are often inaccurate, they could not be relied upon in determining who actually administered medication. Plaintiff also argues that Dr. Burgard's name appears on a "single page of voluminous records" and that the MARS is merely a "prescription log" that is prepared by an outside pharmacy and, in this case, is both unaccompanied by a medical record and not initialed by Dr. Burgard. These general attacks on the alleged unreliability of the DOC medical records are speculative and unconvincing. Rather, the Court focuses on the more compelling arguments supported by the specific facts presented.

As Defendants note, the MARS contains Dr. Burgard's name, but having considered the totality of the circumstances, the information in the MARS was insufficient by itself to place Plaintiff on specific notice as to Dr. Burgard's and LPG's potential responsibility for Plaintiff's overall care and continuity of care. Plaintiff avers that she did not become aware of the level of their involvement until

the Rule 16 Conference.  In support of this argument, Plaintiff identifies the "problem of ascertaining individual responsibility for care and continuity of care, including the provision of prescription medication, and determining which individual or individuals are responsible for ensuring the actual and proper provision of medical treatment to a patient such as Plaintiff in an *institutional setting.*" (ECF Doc. No. 55 at p. 3) (emphasis in original).  Unlike most of the general public, a detainee/inmate has no freedom of choice as to medical providers who are selected and provided at the discretion of the custodial authorities.  This fact supports applying the "John Doe" tolling provision in this case.

To this end, Plaintiff notes that "[i]n the absence of more information than that contained in the MARSs involved in this case, it was not possible for Plaintiff to form a reasonable belief as to the liability or responsibility for failure to provide or deficient provision of medical care and/or treatment in this context, relative to Dr. Burgard, an individual who, to the Plaintiff's knowledge at the time the Complaint was filed, did not provide any relevant medical treatment other than possibly a single prescription appearing on one page of voluminous records."  (ECF Doc. No. 55 at pp. 3-4).  Thus, even accepting Defendants' focus on the fact that Dr. Burgard's name was listed as a prescriber in the MARS, the Court finds that the unique facts of this case call for the application of § 9-5-20 as it pertains to both Dr. Burgard and LPG and a finding that Plaintiff's John Doe claims against them were both proper and timely.  The identification of Dr. Burgard as a prescriber on one occasion does not also identify him (or LPG) as being responsible for discontinuing the medication in issue, the institution's general policy on "benzos," or the overall plan of care for Plaintiff.  In other words, Plaintiff knew that some person or entity must have had overall responsibility for making decisions about her medical care and sued John Does since she was unaware of their specific identity(ies).  The John Doe claims tolled the statute of limitations pursuant to § 9-5-20, and Plaintiff exercised due diligence in amending her Complaint to specifically name LPG and Dr. Burgard after learning of their apparent role in her care.  Given the institutional setting, Plaintiff did not have a reasonable factual

basis to include LPG and/or Dr. Burgard as Defendants in this case until Plaintiff's counsel learned of their apparent role in providing the overall care to Plaintiff.

**Conclusion**

For these reasons, I recommend that the District Court DENY Defendant LPG and Dr. Burgard's Motion for Summary Judgment. (ECF Doc. No. 44). Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 18, 2018